832 So.2d 118 (2002)
STATE of Florida, Appellant,
v.
T.M., A.N., and D.N., Juveniles, Appellees.
No. 2D98-3778.
District Court of Appeal of Florida, Second District.
August 16, 2002.
Rehearing Denied November 8, 2002.
*119 Robert A. Butterworth, Attorney General, Tallahassee, and Michael J. Neimand, Assistant Attorney General, Tampa, for Appellant.
Bruce G. Howie, of Piper, Ludin, Howie & Werner, P.A., St. Petersburg, and Robert L. Hambrick, Clearwater, for Appellees.

ON REMAND FROM THE SUPREME COURT OF FLORIDA
DAVIS, Judge.
This matter is before us on remand from the Florida Supreme Court. The issue is whether the City of Pinellas Park's juvenile curfew ordinance is unconstitutional. In the initial appeal we had upheld the ordinance under a heightened scrutiny test. The Florida Supreme Court reversed and remanded for us to consider the ordinance under a strict scrutiny standard. We hold the ordinance unconstitutional under this test.
The State appeals the trial court's order declaring the City of Pinellas Park's juvenile curfew ordinance unconstitutional and dismissing the petitions for delinquency filed against T.M., A.N., and D.N., which were based on violations of the ordinance. The trial court concluded that the ordinance was not narrowly tailored to achieve the stated purpose in the least restrictive manner.
T.M. and the two other juveniles were cited for a violation of the juvenile curfew ordinance enacted by the City of Pinellas Park.[1] The State Attorney's office filed petitions for delinquency against the juveniles. Prior to trial, T.M. and the others moved to dismiss the petitions, arguing that the ordinance was unconstitutional because it infringed on certain fundamental rights, was vague and overly broad, and was inconsistent with state law. The trial court granted the motions, and the State appealed.
This court determined that the ordinance was not vague, was not overly broad, and was not inconsistent with state law. We concluded that the rights of the juveniles and their parents were not fundamental and that, accordingly, the strict scrutiny test did not apply. Instead, we applied the "heightened scrutiny" test to determine the constitutionality of the ordinance. State v. T.M., 761 So.2d 1140 (Fla. 2d DCA 2000), quashed, 784 So.2d 442 (Fla.2001). Although we concluded that the ordinance did meet the heightened scrutiny test and reversed the trial court, we certified the following two questions to the Florida Supreme Court as being of great public importance:
WHAT LEVEL OF SCRUTINY MUST A COURT APPLY WHEN REVIEWING THE CONSTITUTIONALITY OF *120 A JUVENILE CURFEW ORDINANCE?
WHETHER THE PINELLAS PARK JUVENILE CURFEW ORDINANCE IS CONSTITUTIONAL?
Upon review, the Florida Supreme Court answered the first question by concluding that the proper level of scrutiny is strict scrutiny. Without answering the second question, the court remanded the matter back to this court for application of the strict scrutiny test. T.M. v. State, 784 So.2d 442 (Fla.2001).
At the same time, the Florida Supreme Court issued its decision in J.P. v. State, 788 So.2d 953 (Fla.2001). As it had done in T.M., the supreme court in J.P. remanded the matter back to this court with directions that strict scrutiny be applied to the City of Tampa's juvenile curfew ordinance as well. On remand, we concluded that the Tampa juvenile curfew ordinance was not the least intrusive means of accomplishing the stated purpose of the ordinance and, accordingly, it did not pass the strict scrutiny test. See J.P. v. State, 788 So.2d 953(Fla. 2d DCA 2002).
The Tampa ordinance and the Pinellas Park ordinance are very similar. However, the Pinellas Park ordinance is somewhat more inclusive in that it applies to seventeen-year-old minors and provides an exception involving parental permission given only for errands involving emergencies.[2] Following the reasoning expressed in J.P. that led us to determine that the Tampa ordinance is not narrowly tailored, the Pinellas Park ordinance, which is even broader in its application, must necessarily fail the strict scrutiny test.
In J.P., 2D97-1136, this court noted that there were no statistics presented to the trial court to show the specific need of the ordinance or that the ordinance was a direct attempt to remedy the demonstrated need. Rather, the Tampa ordinance was measured against the general needs stated in the ordinance, i.e. the reduction of juvenile crime and the protection of juveniles from victimization. However, in this case, the State did present the trial court with certain data regarding juvenile crime and juvenile contacts in the city of Pinellas Park for time periods before and after the adoption of the ordinance. Although the statistics do show a decrease in certain categories of juvenile crime following the enforcement of the ordinance, there is no breakdown as to the time of day of the criminal events. Accordingly, the data does not necessarily support the conclusion urged by the State that the ordinance has reduced juvenile crime during the curfew hours.[3] The trial court's finding that the ordinance was unconstitutional and its failure to refer to the statistical data in the written order indicate that the statistics were not persuasive to the trial court. Although the State suggests otherwise, our review leads us to likewise conclude that the statistical data fails to demonstrate that the ordinance is "precisely tailored." See Plyler v. Doe, 457 U.S. 202, 217, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).
We recognize that the City does face the challenges of protecting juveniles from victimization *121 and reducing juvenile crime. However, the attempt to meet these challenges by regulating the public presence of juveniles during the curfew hours must be made within the parameters established by the Constitution of the United States and the Constitution of the State of Florida. Although we previously concluded that, based on the lesser standard of heightened scrutiny, the ordinance is substantially related to an important government interest, we conclude that the ordinance is not narrowly tailored enough to meet the test of strict scrutiny. Accordingly, we affirm the trial court's determination that the juvenile curfew ordinance of the City of Pinellas Park is unconstitutional. However, we again certify to the Florida Supreme Court the following question to be of great public importance:
WHETHER THE PINELLAS PARK JUVENILE CURFEW ORDINANCE IS CONSTITUTIONAL?
Affirmed.
CASANUEVA, J., concurs.
NORTHCUTT, J., concurs specially.
NORTHCUTT, Judge, Specially concurring.
I concur in my colleagues' majority opinion with two reservations. First, I would more soundly and completely reject the importance of the city's statistical evidence. As I explained in my earlier dissent in this case, I believe the statistics lacked any efficacy as justification for this ordinance. State v. T.M., 761 So.2d 1140, 1152-1153 (Fla. 2d DCA 2002) (Northcutt, J., dissenting). Second, given that our ruling today is based on our decision in J.P. v. State, 788 So.2d 953(Fla. 2d DCA 2002), I must stress my view that it is an open question whether the city's interest in protecting children's welfare can ever justify a blanket prohibition against them leaving their homes during specified hours. Thus, I agree that this ordinance is unconstitutional for at least the reasons described in the majority opinion.
NOTES
[1] Pinellas Park City Ordinance 16-124.
[2] The Tampa ordinance applied to minors under seventeen years of age and allowed an exception for a juvenile on an errand for a parent if the parent provided a prior written permission statement.
[3] In Nunez v. San Diego, 114 F.3d 935, 937 (9th Cir.1997), a Justice Department report on a national survey regarding juvenile offenders and victims showed that juvenile crime peaked at 3 p.m. and again at 6 p.m. Accordingly, a decrease in overall juvenile crime is not necessarily related to the nocturnal curfew.